UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.   4:19CR0770 HEA/PLC |
| ANTHONY LEMICY, | ) ) ) |
| Defendant. | ) ) |

## GOVERNMENT'S AMENDED TRIAL BRIEF

COMES NOW the United States of America, by and through its attorneys Sayler Fleming, United States Attorney for the Eastern District of Missouri, and Colleen C. Lang and Nathan Chapman, Assistant United States Attorneys for said District, and submits an amended version of its' trial brief, outlining the anticipated testimony of witnesses and potential evidentiary issues in the upcoming trial of the above-captioned matter. In particular, the Government has supplemented the brief with case law on the admissibility of flight and revised its' anticipated witness testimony.

## PROCEDURAL HISTORY

On September 19, 2019, the defendant was indicted in this case by a federal grand jury on one count of Production of Child Pornography (also captioned as Sexual Exploitation of a Minor, Title 18, United States Code Section 2251). A superseding indictment was returned by the Grand Jury on April 28, 2021. That indictment added an additional three (3) counts of Production of Child Pornography.   Doc. #69.   The defendant filed a motion to suppress the evidence. Subsequently, an evidentiary hearing was held on November 16, 2021. Doc. #110. The

1

government presented evidence and the defendant cross-examined the government's witnesses. After post-hearing briefing had been submitted, Judge Cohen recommended that the defendant's motion to suppress evidence be denied. Doc. #135. Defendant filed objections to the Magistrate Court's Report and Recommendation. Doc. #142. The District Court filed its' Opinion, Memorandum and Order denying the defendant's motion to suppress on October 6, 2022. Doc. #165.

The matter has been set for trial for the week of March 27, 2023.

## CHARGES

1. <u>Count One</u>: Sexual Exploitation of a Minor/Production of Child Pornography in violation of Title 18 U.S.C. § 2251(a) and 2251(e).

2. <u>Count Two</u>: Sexual Exploitation of a Minor/Production of Child Pornography in violation of Title 18 U.S.C. § 2251(a) and 2251(e).

3. <u>Count Three</u>: Sexual Exploitation of a Minor/Production of Child Pornography in violation of Title 18 U.S.C. § 2251(a) and 2251(e).

4. <u>Count Four</u>: Sexual Exploitation of a Minor/Production of Child Pornography in violation of Title 18 U.S.C. § 2251(a) and 2251(e).

## BRIEF STATEMENT OF FACTS

The United States expects the evidence will show that the defendant was babysitting several minor children for approximately a week in July of 2019. The children were staying at the defendant's home. On July 18, 2019, a mother of two of the children was told by the children that the defendant had been inappropriately touching the minor females. She called

911 and St. Louis City Police Officers responded. The defendant's cell phone was seized and he was interviewed by law enforcement. Shortly after the seizure of the defendant's cell phone, detectives located on the SD card within the cell phone videos of child pornography that depicted two minor females in the shower at the defendant's apartment. These children were identified as M.R. (eleven-years old) and K.C. (eight-years old), and this conduct is charged in Count One of the indictment. Later, detectives were able to search the contents of the cell phone and discovered several child pornography videos of a minor female child, seven-year old L.R., that had been taken in the defendant's bedroom. This conduct is charged in Counts Two, Three, and Four of the indictment.

The United States anticipates that at trial adult witnesses will identify the children in the child pornography videos. Further, evidence visible within the videos of child pornography indicate that the defendant produced them. First, in the shower videos, the person filming the children is wearing green shorts. These match the green shorts that are seen on the defendant at the police station. In the child pornographic videos from defendant's bedroom, a tattoo is visible on the arm of the person molesting the child in the video. This tattoo matches a tattoo on the defendant's arm. The defendant was not charged with the crimes immediately and he was released from custody. The defendant abruptly moved to Washington state after the allegations. The defendant was subsequently located and arrested by FBI agents in Washington State and brought to Missouri in federal custody. (State prosecutors have also issued charges against the defendant.)

## LEGAL ANALYSIS

1. Elements of the Offense of Sexual Exploitation of a Minor

The Indictment charges defendant in Count One through Four with Sexual Exploitation of a Minor in violation of Title 18, United States Code, Section 2251(a). The essential elements of this violation of Title 18, United States Code, Section 2251(a) are: (1) defendant knowingly employ, use, persuade, induce, entice, and coerce a minor to engage in sexually explicit conduct, (2) for the purpose of to produce a visual depiction of such conduct, and (3) the materials used to attempt to produce the visual depiction had been mailed, shipped, or transported across state lines or in foreign commerce by any means, including by computer or cellular phone.

    a.   Definition of Sexually Explicit Conduct.

"Sexually explicit conduct" is defined as actual or simulated sexual intercourse, including genital-genital, oral-genital, anal-genital, oral-anal, whether between persons of the same or opposite sex; masturbation; and the lascivious exhibition of the genitals or pubic area of any person. The definition of "sexually explicit conduct" includes the "lascivious exhibition of the genitals or pubic area of any person." Title 18, United States Code, Section 2256(2)(A)(v). The Eighth Circuit Court of Appeals held that when the child is nude or partially clothed, when the focus of the depiction is the child's genitals or pubic area, and when the image is intended to elicit a sexual response in the viewer, the depiction is lascivious." *United States v. Horn*, 187 F.3d 781, 789 (8th Cir. 1999). "[E]ven images of children acting innocently can be considered lascivious if they are intended to be sexual." *United States v. Johnson,* 639 F.3d 433, 440 (8th Cir. 2011). In Johnson, the court explained how to determine whether images were "lascivious:"

> In determining whether images are "lascivious," we have referred to the criteria listed in *United States v. Dost*, 636 F.Supp. 828, 832 (S.D.Cal.1986), *aff'd sub nom., United States v. Wiegand*, 812 F.2d 1239 (9th Cir.), *cert. denied*, 484 U.S. 856, 108 S.Ct. 164, 98 L.Ed.2d 118 (1987). The factors in *Dost* included:

4

      (1) whether the focal point of the picture is on the minor's genitals or pubic area;
      (2) whether the setting of the picture is sexually suggestive;
      (3) whether the minor is depicted in unnatural poses or inappropriate attire considering the minor's age;
      (4) whether the minor is fully or partially clothed or is nude;
      (5) whether the picture suggests sexual coyness or a willingness to engage in sexual activity; and
      (6) whether the image is intended to elicit a sexual response in the viewer.

The Eighth Circuit Model Pattern Instruction "6.18.2252A 'Lascivious' Explained," is modeled after the *Dost* factors.

In the instant offense, Count I is charged as a lascivious display of M.R. and K.C.'s genitals. It is anticipated that the witnesses will confirm that this video depicts M.R. and K.C. The children's faces are visible during parts of the video. The video charged in Count I meets the *Dost* factors because the minors' genitals are clearly the focus of the video. At one point, the defendant even moves the shower curtain so he can film the lower half of the children more closely.

The video charged in Count II depicts an adult male's penis penetrating (or attempting to penetrate) the genitals of minor female L.R. in the defendant's bedroom.   This video, which was located on the defendant's cell phone, meets the definition of sexually explicit conduct because not only does it show a sex act, it also depicts lascivious exhibition of the genitals or pubic area of any person.   The child is clearly part of the sex act.

The video charged in Count III depicts an adult male's penis attempting to penetrate minor female L.R.'s anus in the defendant's bedroom.   This video, which was located on the defendant's cell phone, meets the definition of sexually explicit conduct because not only does it

5

show a sex act, it also depicts lascivious exhibition of the genitals or pubic area of any person. The child is clearly part of the sex act.

The video charged in Count IV depicts a lascivious display of L.R.'s genitals. The video charged in Count IV meets the *Dost* factors because the minor's genitals are clearly the focus of the video.

b. <u>Interstate Commerce</u>.

The defendant's LG brand smartphone and the SanDisk brand SD card within the smartphone had been mailed, shipped, or transported across state lines or in foreign commerce by any means.

> *United States vs, McCloud*, 590 F.3d 560 (8th Cir.) at 569 states, "In *Fadl,* the defendant asserted that § 2251(a) was unconstitutionally applied to his case because he did not transmit any images of child pornography across state lines and the government presented no evidence that he had intended to do so. 498 F.3d at 865–66. In rejecting the defendant's argument, we cited the defendant's acknowledgment "that he used cameras that had crossed state lines to take the photographs." *Id.* We observed that this court "has on a number of occasions held that the use of a camera that has moved in interstate commerce provides a sufficient jurisdictional nexus to punish the production of child pornography under the Commerce Clause." *Id.* (citing *United States v. Mugan,* 441 F.3d 622 (8th Cir.2006) (holding that federal statute prohibiting local production of child pornography using materials that had moved in interstate commerce was not unconstitutional as applied to defendant; defendant had taken digital pictures of himself engaging in intercourse with his 13–year–old daughter and then stored images on digital memory card, which had previously been transported in interstate commerce, and storage of images on digital card placed them on medium which would permit immediate and widespread dissemination over the internet))."

LG brand cell phones are not manufactured in the state of Missouri, thus the cell phone traveled in interstate commerce.   The LG smartphone was manufactured in China. Next to the smartphone's serial number and IMEI number, "Made in China" is written on the smartphone.

The device itself is self-authenticating. An inscription on the device itself that it was

produced outside of the United State is enough. The First Circuit upheld a defendant's conviction when the element of "interstate commerce" was proven by the government with the inscription "made in China" on the thumb drive containing the child pornographic material.

> The district court rightly considered the fact that inscriptions indicating foreign origin are regulated, *see* 19 U.S.C. § 1304, and federal law prohibits false or misleading designations of origin, *see* 15 U.S.C. § 1125(a). Moreover, under the federal rules of evidence trade inscriptions are self-authenticating, Fed.R.Evid. 902(7), meaning they "require no extrinsic evidence of authenticity in order to be admitted," Fed.R.Evid. 902. An authentic inscription, of the kind made regularly by manufacturers in accordance with federal law, bears significant similarity to other forms of evidence admissible under the enumerated hearsay exceptions. *See* Fed.R.Evid. 803(6) (records of regularly conducted activity), (9) (certain information reported to a public office in accordance with a legal duty). Common sense, too, suggests a low probability that someone would stamp "Made in China" on a device made in the United States and presumably marketed here. Certainly the record here contains no reason to think otherwise. As to the other prongs of Rule 807(a), Burdulis's new arguments are largely perfunctory and provide no cause to treat as plain error any doubt that the inscription was more probative than other evidence reasonably available to the government or that admission of the evidence served the interests of justice.   *United States vs. Burdulis,* 753 F.3d 255, 263-264 (2014).

c. <u>Mistake of Age is Not a Defense.</u>

The defendant's belief or knowledge of the victims' ages is irrelevant to the charged offenses, production of child pornography in violation of Title 18 United States Code 2251(a), and any evidence thereof should be excluded from evidence or argument at trial.   The defendant's knowledge of the age of the victim is not an element of this offense and numerous courts, including the United States Supreme Court, have held that to sustain a conviction under Section 2251, it is unnecessary to show that the defendant knew the age of the victim or that the victim was, in fact, a minor. *See United States v. X-Citement Video, Inc.,* 513 U.S. 64, 77 n. 5 (1994) (statement that defendants "may be convicted under Section 2251(a) without proof they had knowledge of age.")

7

## WITNESSES AND EXHIBITS

1. <u>Anticipated Witnesses</u>

    a. <u>St. Louis Police Officer Courtney Jordan</u>

St. Louis City Police Officers Courtney Jordan will testify that on July 25, 2019, he responded to a 911 call about a disturbance and possible child molestation at 3319 Osage Street.  When Officer Jordan and his partner arrived, the mother of one of the victims, T.C., and several children were outside of the home on Osage Street, while the defendant was inside.

Officer Jordan will testify that at Lemicy's request, Officer Jordan entered Lemicy's apartment.  When it was determined the defendant would be detained for further investigation, Officer Jordan informed the defendant that he would be detained and then placed the defendant in handcuffs.   The defendant then asked Officer Jordan to retrieve the defendant's cell phone from off the counter. Officer Jordan will testify that he took the defendant's cell phone and maintained it in his possession for safekeeping.

    b. <u>Detective Todd Hefele.</u>

Detective Hefele is a veteran child abuse detective. Det. Hefele will testify that after the defendant was transported to Police Headquarters, he took over the investigation and possession of the defendant's cell phone. Det. Hefele placed the defendant in an interview room that was equipped with video-recording equipment. Det. Hefele will testify that while in the room, the defendant was video-recorded and the video captured the defendant wearing green shorts. Det. Hefele will testify that in the child pornography of M.R. and K.C. – the

8

person recording that video of child pornography on the defendant's LG smartphone was also wearing identical green shorts.  Further, after the defendant's cell phone was subsequently unlocked, Det. Hefele went through the contents and located videos of child pornography depicting minor child victim, L.R.  Det. Hefele confirmed that the child in the videos was L.R.  In one of the videos, the arm of preparator is visible and there is a tattoo on that arm.  Det. Hefele will testify that the tattoo in the video of child pornography matches the tattoo on the arm of the defendant.

If the defendant testifies, and his testimony is different than what he reported to Det. Hefele during his interview on July 2019, the government anticipate Det. Hefele will be recalled to the stand to testify about the change in defendant's story.

      c. <u>Detective Michael Spreck.</u>

Detective Michael Spreck is currently employed by the St. Louis Metropolitan Police Department as a digital evidence examiner.  Det. Spreck will testify that as a digital evidence examiner for the police department, Det. Spreck forensically examines computers, computer devices, cell phones, and other digital storage devices for evidence of crimes and/or ownership.  Det. Spreck has attended and completed numerous trainings in the area of digital forensics. Det. Spreck will testify that he first attempted to access the contents of the defendant's smartphone in July 2019, but it was locked in a way that he could not bypass.  Det. Spreck was able to access the contents of the cell phone's SD card, which contained child pornography videos of M.R. and K.C. Det. Spreck will testify that several months later he had Det. Wilferd take the cell phone to the United States Secret Service (USSS), which had advanced forensic tools, to see if those

9

tools could access the cell phone's contents.   The forensic tool at the USSS was able to bypass the lock on the cell phone and the contents were then accessible to investigators.

    d.    <u>Det. Dave Wilferd.</u>

Det. Wilferd will testify that in September of 2020 he took the defendant's cell phone to the United States Secret Service's Office to use their advanced Cellebrite software to extract the contents of the defendant's cell phone.

    e.    <u>C.L.</u>

C.L. is the mother of victim "M.R." and she will be testifying at trial about her daughter being in the care of the defendant the week of July 17, 2019.

    f.    <u>L.R.</u>

L.R. was seven-years old in July of 2019. She may testify at trial. Other witnesses will identify her in the videos of child pornography.

    g.    <u>M. H. R.</u>

M.H.R. will testify that she is the mother of victim L.R. and will testify about how her children were babysit by the defendant at times.

    h.    <u>CAC Interviewer: Anthony Harper</u>

Mr. Harper is a forensic interviewer for the St. Louis Child Advocacy Center (CAC). The CAC is an organization that is funded by the state, as well as local grants. The purpose of the CAC is to provide a safe place for children to be interviewed when there is evidence that they have been either physically or sexually abused.   Anthony Harper is a trained CAC interviewer with experience in dealing with children who have suffered a trauma. Harper conducted some of video-taped interviews of the minor victims in this case.   If the government decides to introduce

L.R.'s video-taped CAC interview, it is anticipated that Mr. Harper would testify to establish the foundation for the CAC video, as well as provide context to the video. As an expert in the field, Harper can also generally discuss how children respond to and disclose trauma, including sexual abuse.

   i. Richard "Cliff" Schroff.

Former FBI special agent Schroff will testify that he was a FBI agent in Washington State in August of 2019. He assisted in locating and arresting the defendant in Tacoma.

   j.   M.R.

M.R. was ten-years old in July of 2019. The Government will not be calling this witness at trial and anticipates that her mother will identify her in the child pornography videos.

   k.   K.C.

K.C. was eight-years old in July of 2019.   The Government will not be calling this witness at trial and anticipates other witnesses will identify K.C. in the child pornography videos.

2. Exhibits.

The United States' intends to introduce several exhibits into evidence.   The main exhibits will consist of the child pornography videos charged in indictment.   These were located on the defendant's cell phone and SD card.   Indices of ownership of the cell phone will also be presented. It is anticipated that images depicting the defendant's tattoos and clothing will also be presented. The child victims were forensically interviewed at the Children's Advocacy Center (CAC) by professional child interviewers. One or more of these interviews may be introduced at trial.   The Government also intends to play one 911 call at

11

trial.

An exhibit list will be filed prior to the start of trial. In addition, a copy of the exhibits that the government intends to admit into evidence will be provided to the Court and the defendant. All child pornography exhibits will be treated will the necessary precautions. To the greatest extent possible, the government intends to use presentation software when presenting its case. A binder of the original documents will be available for the witnesses and also for the jury to take into the jury room.

## EVIDENTIARY ISSUES

1. <u>Photographs/Video Evidence.</u>

The government intends to introduce photographs and videos of the victims and the defendant. Under Federal Rule of Evidence 90l(a), testimony by a witness that a photograph fairly and accurately depicts that scene at some relevant time is a sufficient basis for admission of the photograph. *See United States v. Brannon*, 616 F.2d 413, 416 (9th Cir.), *cert. denied*, 447 U.S. 908 (1980); *Louis Vuitton S.A. v. Spencer Handbags Corp.*, 765 F.2d 966, 973-74 (2d Cir. 1985) (and cases cited therein).

2. <u>CAC interviews.</u>

The video-taped CAC interviews of the minor victims might be introduced at trial. These prior-recorded child forensic interviews include the minor victim's statements about the crime and events surrounding the crime. Children's statement during a forensic interview may be testimonial. *Charboneau*, 613 F.3d at 861. However, when a child victim testifies at trial, the right of confrontation is met regarding the use of the prior statement. *Id.*; *United States Spotted War Bonnet*, 933 F.2d 1471, 1473-74 (8th

12

Cir. 1991). All that is required is the right to cross examine the witness. "[A] perfectly satisfactory cross-examination is not required by the [Confrontation] Clause, and a witness who cannot remember the details of statements she has made in the past can still be sufficiently available for cross-examination to satisfy the constitutional requirements." *Id*. at 1474. "[T]he Confrontation Clause guarantees only 'an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.'" *Kentucky v. Stincer*, 482 U.S. 730, 739 (1987) cited in *United States v. Owens*, 484 U.S. 554, 559 (1988).

      3.      <u>Statements Offered by the Defendant</u>

If the government chooses not to introduce statements made by the defendant, the defendant may not introduce those statements as they would be hearsay because they would not be offered by a party-opponent. At this time, the Government does not intend to use the statements the defendant made to the police.

      4.      <u>Frightened (or Hostile) Witnesses</u>

Some of the witnesses called by the government will likely be nervous as a result of their prior relationship with the defendant and may be extremely frightened during the course of direct examination. Rule 611(c) permits the government to use leading questions when examining frightened or hostile witnesses. *United States v. Bear*, 883 F.2d 1382 (8th Cir. 1989); *United States v. Hicks*, 748 F.2d 854, 859 (4th Cir. 1984); *United States v. Olivo*, 69 F.3d 1057 (10th Cir. 1995)(judge given widest latitude in designating witness as hostile); *United States v. Castro-Romero,* 964 F.2d 942, 943-44 (9th Cir. 1992).

      5.      <u>Use of Nicknames</u>

Several of the victims in this case know the defendant by his nickname "Texas."   The government intends to elicit this information from any witness who might only know the defendant by his nicknames, and cannot identify or refer to him by his proper name.

6.     Reciprocal Discovery

To date, the government has provided discovery to the defense.   The government has requested reciprocal discovery. Should the defendant seek to introduce any evidence that should have been provided to the government as reciprocal discovery, the Court should exclude it pursuant to Rule 16(d)(2) of the Federal Rules of Criminal Procedure.

7.     Presentation of Witnesses

The United States intends to present the evidence in this case in a generally sequential fashion.   However, it may become necessary due to scheduling issues to call a witness out of order.

8. Evidence of Flight.

It is well settled that flight of the accused subsequent to the commission of a crime is, in certain instances, "a circumstance proper to be laid before the jury as having a tendency to prove his guilt." *Allen v. United States*, 164 U.S. 492, 499 (1896).   Moreover, as a general rule, flight or escape from custody is considered to be an "admission by conduct."   *United States v. Hankins*, 931 F.2d 1256, 1261 (8th Cir. 1991); *see also United States v. Myers*, 550 F.2d 1036, 1049 (5th Cir. 1977).   Evidence of flight, escape from custody, resisting arrest, concealment, taking a false name, and other similar conduct are admissible as evidence that the accused was conscious of their guilt, and therefore, actually guilty of the crime charged.   *Hankins*, 931 F.2d at 1049.

The extent to which flight evidence is admissible leans heavily on its probative value. Probative value of flight as circumstantial evidence of guilt depends "upon the degree of confidence with which four inferences can be drawn:

> (1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged." *United States v. Peltier*, 585 F.2d 314, 323 (8th Cir. 1978).

The Eighth Circuit has held that flight evidence is admissible if there is sufficient evidence to warrant an inference that the flight was prompted by considerations related to the present issue. *United States v. Roy*, 843 F.2d 305, 310 (8th Cir. 1988); *see also Peltier*, 585 F.2d at 323. There is no requirement, however, that the flight be actually connected to the crime charged. Instead, the requirement is that evidence exists that the flight was connected to a more general "awareness of guilt." *United States v. Eggleton*, 799 F.2d 378, 381 (8th Cir. 1986).

In *Roy*, the defendant participated in a murder and abandoned the victim's body by a tree. He then entered his vehicle and began traveling to North Dakota. While traveling, the defendant hit another vehicle and fled from that scene. Officers went to the scene and attempted to arrest the defendant who ran away from the officers. He was subsequently taken into custody. At trial, the government introduced this flight evidence as consciousness of guilt. On appeal, the Eighth Circuit found the evidence of flight to be admissible and rejected the defendant's argument that the flight was in response to the hit and run. The Court explained, "the fact that [the defendant] also had committed a traffic violation which could have been the reason for his flight does not render evidence of the flight inadmissible to show consciousness of guilt." *Roy*, 843 F.2d at 310.

15

The Court explained that the trip to North Dakota was made immediately after the murder and the flight from police took place within a few hours after the murder.  *Id.*

Here, the evidence will show that the defendant indeed fled to avoid apprehension.  The police first detained the defendant on July 25, 2019, on charges of child molestation. He was released while the police contained to investigate the matter.   On or about August 16, 2019, Det. Hefele went to the defendant's residence in St. Louis and was told by a maintenance worker at the home that the defendant had moved out.

An arrest warrant was issued for the defendant, investigators began to search for the defendant since he was no longer in the St. Louis area.   Investigators determined he may be at an address in Tacoma, Washington. On August 29, 2019, FBI agents in Washington went to the address of 4807 96th Street, East Tacoma, Washington, with an arrest warrant for the defendant. When they arrived the agents called for the defendant to come out of the home. The defendant did not comply.   At first the FBI could not locate him in the home, but on a second sweep of the property they discovered the defendant hiding inside of a front-loading dryer.   He was subsequently conveyed back to St. Louis by federal authorities.

Clearly, the initial flight to Washington after his first arrest and he his attempt to hide from law enforcement were "prompted by considerations related to the issue in question."  *See also United States v. Webster,* 442 F3d 1065 (8th Cir. 2006) (allowing flight evidence and rejecting argument that the defendant may have had other possible reasons for fleeing from police). Further, the Government is entitled to produce evidence that explains the circumstances of the investigation and arrest.  *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002) (citing *United States v. Harris*, 956 F.2d 177, 179 (8th Cir. 1992)).   Evidence of flight and the circumstances of

16

a defendant's arrest may be admitted to demonstrate that the defendant was intentionally hiding or evading capture, which goes to the defendant's consciousness of guilt. *Lupino*, 301 F.3d at 645-46.

When allowing flight evidence in, the court should also consider the amount of flight evidence presented in relation to the length of the trial and how much time is necessary for its presentation. *See Peltier*, 585 F.2d at 324. Once the court has decided that there is sufficient evidence to support a reasonable inference that there is a connection between the accused's flight and their guilt of the charged crime, it is the jury's responsibility to decide what, if any, weight to give the flight evidence. *Webster*, 442 F.3d at 1067. In this case, the flight evidence will be presented by Agent Schroff, who was part of the FBI team that arrested the defendant in Tacoma, Washington.

## **CONCLUSION**

The foregoing is a summary of points the government anticipates may arise at trial. Should any legal issues arise that have not been covered in this trial brief, the Government respectfully requests leave to submit such further memoranda as may be necessary.

Respectfully submitted,
SAYLER FLEMING
United States Attorney


_/s/ *Colleen Lang*_
COLLEEN LANG, 56872MO
Assistant United States Attorney
111 South 10th Street, Rm. 20.333
St. Louis, Missouri 63102
(314) 539-2200
colleen.lang@usdoj.gov

17

## CERTIFICATE OF SERVICE

      I hereby certify that on March 20, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon stand-by counsel. Further, a copy was mailed to the defendant at Ste. Genevieve Jail, 5 Basler Drive, Ste Genevieve, Missouri, 63670.

                                                                                  /s/ *Colleen Lang*
                                                             COLLEEN LANG, 56872MO